UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
THE AMERICAN CENTER FOR                         )
    CIVIL JUSTICE,                              )
                                                )
        Plaintiff,                              )
                                                )
    v.                                          )    Civil Action No. 09-0233 (PLF)
                                                )
JOSHUA M. AMBUSH, ESQ.,                         )
                                                )
        Defendant.                              )
_____)

OPINION

On March 21, 2011, Magistrate Judge Deborah A. Robinson issued a memorandum opinion and order in which she denied the motion of plaintiff, the American Center for Civil Justice ("ACCJ"), for a stay of this case or, in the alternative, for a transfer to the United States District Court for the District of Puerto Rico. See American Ctr. for Civil Justice v. Ambush, Civil Action No. 09-0233, 2011 WL 971643, at *4 (D.D.C. Mar. 21, 2011). This matter now is before the Court on ACCJ's objection to that decision. Upon consideration of the parties' papers, the relevant legal authorities, and the entire record in this case, the Court concludes that Magistrate Judge Robinson's decision is neither clearly erroneous nor contrary to law. Consequently, the Court will deny ACCJ's objection, will affirm Magistrate Judge Robinson's decision, and will deny ACCJ's motion for a stay or, in the alternative, for a transfer.[1]

---

[1] The papers reviewed in connection with the pending motion include: plaintiff's second amended complaint for declaratory judgment, permanent injunction, and damages ("Compl.") [Dkt. No. 25]; defendant's amended counterclaim for damages and declaratory relief ("Countercl.") [Dkt. No. 87]; plaintiff's motion for stay or, in the alternative, for transfer to the United States District Court for the District of Puerto Rico ("Stay/Transfer Mot.") [Dkt. Nos. 95,

I. BACKGROUND

Although the claims in this case are quite common — breach of contract, breach of fiduciary duty, tortious interference with a contract or business expectancy, among others — they ultimately arise out of an act of terrorism known as the Lod Airport Massacre. On May 30, 1972, three members of the Japanese Red Army, armed with submachine guns and hand grenades, opened fire on passengers awaiting their baggage at the Lod International Airport, located near Tel Aviv, Israel. See Compl. ¶ 14; see also Hernandez v. Air France, 545 F.2d 279, 281 (1st Cir. 1976).[2] In total, 24 people were killed and 78 were wounded, many of whom were Puerto Rican tourists on a pilgrimage trip to Israel. See Compl. ¶ 14; see also Hernandez v. Air France, 545 F.2d at 281.

ACCJ, "a non-profit organization dedicated to recompense for victims of terrorism," Compl. ¶ 1, and Joshua M. Ambush, an attorney, originally worked together to help pursue litigation on behalf of some of the Puerto Rican victims of this 1972 attack. See Compl. ¶ 18; Countercl. ¶ 5. In 2006, Mr. Ambush, on behalf of such victims and allegedly at the

---

96]; defendant's opposition to plaintiff's motion for stay or, in the alternative, for transfer ("Stay/Transfer Opp.") [Dkt. No. 101]; plaintiff's reply memorandum in support of its motion for stay or, in the alternative, for transfer ("Stay/Transfer Reply") [Dkt. No. 103]; plaintiff's supplemental memorandum in support of its motion for stay or, in the alternative, for transfer ("Pl. Supplemental Br.") [Dkt. No. 104]; defendant's response to plaintiff's supplemental memorandum ("Def. Supplemental Br.") [Dkt. No. 105]; plaintiff's objection to Magistrate Judge Robinson's March 21, 2011 memorandum opinion and order ("Objection") [Dkt. No. 109]; defendant's response to plaintiff's objection to Magistrate Judge Robinson's March 21, 2011 memorandum opinion and order ("Response") [Dkt. No. 111]; and plaintiff's reply in support of its objection to Magistrate Judge Robinson's March 21, 2011 memorandum opinion and order ("Reply") [Dkt. No. 112]. The Court also reviewed the transcript of the proceedings held before this Court on April 1, 2011, as well as the transcript of the proceedings held before Magistrate Judge Robinson on February 2, 2011.

[2] This airport now is known as the Ben Gurion International Airport.

direction of ACCJ, filed suit in the United States District Court for the District of Columbia against those purportedly responsible for the attack; that case was captioned Franqui v. Syria, Civil Action No. 06-0734 (Walton, J.). Subsequently, one of the named defendants in Franqui v. Syria, the government of Libya, established a $1.8 billion fund to compensate victims of state sponsored terrorism, which included the 1972 attack. See Compl. ¶ 29; Countercl. ¶ 36. This case is the result of a dispute between ACCJ and Mr. Ambush primarily over compensation relating to disbursements from the $1.8 billion fund; it also involves various allegations of tortious behavior. See generally Compl.; Countercl.

As ACCJ describes it, to accomplish the organization's mission, it "enters into written agreements with victims of terrorism or the estate representatives of murdered victims (collectively, 'claimants')," whereby ACCJ "advances funds for litigation and retains law firms and individual lawyers to prosecute the claims on behalf of" such claimants. Compl. ¶ 8. In most instances, ACCJ "retains and supervises the efforts of counsel under a power of attorney granted by [claimants] to a representative of [ACCJ] and advances the money for expenses and experts as needed." Id. In exchange, the claimants agree to pay ACCJ "20% of the net proceeds of any recovery" and agree to reimburse ACCJ's legal fees and expenses. Id. ¶ 9 (quotations omitted). ACCJ emphasizes that, under the terms of these contracts, "payment of legal fees, expenses, and pledges will not exceed 20% of the claimants' recovery, enabling the claimant to retain 80% of any recovery." Id. ¶ 11; see also id. ¶ 9.

ACCJ alleges that, in 2001, it engaged Mr. Ambush to help pursue litigation on behalf of victims of the Lod Airport Massacre and tasked him "with traveling to Puerto Rico," where he had spent part of his childhood, "to negotiate agreements between [ACCJ] and Puerto

3

Rican victims of the Lod Massacre." Id. ¶ 19; see Countercl. ¶ 22. Mr. Ambush negotiated agreements with ten Puerto Rican claimants: five claimant agreements were signed by representatives of estates seeking wrongful death damages; five more were signed by victims seeking compensation for physical injuries (collectively, the "Franqui claimants"). See Compl. ¶ 20; Countercl. ¶¶ 27, 28.

Subsequently, on April 21, 2006, Mr. Ambush — on behalf of victims of the Lod Airport Massacre, including the Franqui claimants — filed a complaint in Franqui v. Syria against, among others, the government of Libya. See Compl. ¶ 23; Countercl. ¶ 32. While Franqui v. Syria was pending, Libya

> entered into an agreement . . . whereby it would establish a fund in the amount of $1.8 billion . . . , to be administered by the United States Department of State, to compensate victims of terrorism sponsored by Libya. . . . The five Franqui wrongful death claimants would be entitled to approximately $10,000,000 each from the [f]und . . . . Additional sums of approximately $3,000,000 each [were] being made available . . . to compensate the personal injury claimants.

Compl. ¶ 29.

Thus, under the terms of the contracts that Mr. Ambush negotiated with the Franqui claimants, ACCJ potentially would be entitled to more than $12 million. And with millions of dollars now at stake, disputes between the parties arose over the issue of compensation: specifically, whether Mr. Ambush was entitled to a portion of ACCJ's total recovery or only his hourly fees. See Compl. ¶¶ 29-31; Countercl. ¶¶ 34, 37-43. Furthermore, ACCJ came to believe that Mr. Ambush "improperly induced each of the Franqui wrongful death claimants and four of the personal injury claimants to revoke the powers of attorney that they had

4

granted to [ACCJ]," Compl. ¶ 36, and that Mr. Ambush "entered into agreements with [these] claimants for a percentage share of their recovery in excess of the 20% of their recovery that is payable to [ACCJ]." Id. ¶ 40.

The parties were unable to resolve their disputes and this litigation ensued. On February 6, 2009, ACCJ filed suit against Mr. Ambush in this Court. After amending its complaint twice, ACCJ asserts three claims against Mr. Ambush: it requests (1) a declaratory judgment that Mr. Ambush is not entitled to compensation beyond his hourly rate for work performed for ACCJ; (2) a claim for money damages for breach of fiduciary duty; and (3) a claim for damages for tortious interference with a contract or business expectancy arising out of the allegation that Mr. Ambush intentionally caused nine Franqui claimants to revoke the powers of attorney previously granted to ACCJ. See id. ¶¶ 55-65. ACCJ also seeks injunctive relief. See id. at 24-25. Mr. Ambush filed a counterclaim and subsequently filed an amended counterclaim with leave of court. See generally Countercl.; see also Minute Entry, Sept. 30, 2010. Mr. Ambush requests (1) a declaratory judgment; (2) a claim for money damages for breach of contract; and (3) a claim for damages under *quantum meruit*. See Countcl. ¶¶ 56-69. Mr. Ambush also appears to seek injunctive relief. See id. at 1.

Since the beginning of this case, "the often contentious litigation of this action has proceeded apace." American Ctr. for Civil Justice v. Ambush, 2011 WL 971643, at *1. Indeed, as Magistrate Judge Robinson described,

> [t]he litigation activity initiated by [ACCJ], in addition to the filing
> of the complaint . . . , includes — but is not limited to — the filing
> of an amended complaint; moving for a preliminary injunction;
> filing a second amended complaint; agreeing with [Mr. Ambush]
> to conduct discovery in two phases; moving for judgment on the

5

>     pleadings with respect to [Mr. Ambush's] counterclaim; moving
>     for [Magistrate Judge Robinson's recusal]; moving to compel
>     discovery[;] and filing an answer to [Mr. Ambush's] amended
>     counterclaim.

Id. (internal citations omitted). But on January 4, 2011 — after almost two years of vigorous litigation — ACCJ requested that this case be stayed or transferred in light of the pendency of Berganzo v. Ambush, Civil Action No. 10-1044, filed on January 25, 2010, in the United States District Court for the District of Puerto Rico. See Stay/Transfer Mot. at 1-3. There, certain Franqui claimants have filed suit against Mr. Ambush, seeking recovery of $2 million and alleging that

>     [they] were led to believe by Mr. Ambush, through
>     misrepresentations and nondisclosure by him and/or his agents, on
>     the need to sign a certain additional "retainer agreement" for fees
>     in excess of what the [plaintiffs] had originally agreed to pay
>     [ACCJ] . . . , who had retained and was paying Mr. Ambush his
>     legal fees for representing the [claimants in the Franqui v. Syria]
>     action, a fact unbeknownst to plaintiffs.

See ACCJ's Notice of Subsequent Developments, Ex. A, Complaint in Civil Action No. 10-1044 (D.P.R.) ¶ 2, Apr. 23, 2010 [Dkt. No. 69]. Thus, the plaintiffs in Berganzo request that the court in Puerto Rico declare these purported retainer agreements null and void and request that the court award damages. See id. ¶¶ 49, 52.

After briefing on ACCJ's motion to stay or transfer was complete, Magistrate Judge Robinson heard oral argument on February 2, 2011. See Minute Entry, Feb. 2, 2011; see also Hr'g Tr., Feb. 2, 2011 [Dkt. No. 110]. On March 21, 2011, Magistrate Judge Robinson denied ACCJ's motion, concluding that ACCJ identified no ground warranting that this case be stayed and that ACCJ had failed to carry its burden to show that a transfer was warranted. See American Ctr. for Civil Justice v. Ambush, 2011 WL 971643, at *3-4.

On March 31, 2011, ACCJ filed a timely objection, and this Court held a status conference the following day. See Minute Entry, Apr. 1, 2011. At that status, the parties represented that Mr. Ambush was to be deposed in Berganzo v. Ambush on April 26, 2011. Because Mr. Ambush's deposition might assist the parties and the Court with respect to the issue of ACCJ's objection, the Court ordered that Mr. Ambush's response to ACCJ's objection would not be due until May 27, 2011, one month after Mr. Ambush's deposition in Berganzo. See Minute Order, Apr. 1, 2011. Mr. Ambush since has been deposed and has filed his response to ACCJ's objection; ACCJ has filed its reply. Thus, this matter now is ripe for the Court's decision.

## II. DISCUSSION

### A. Standard of Review

The decision whether to stay or transfer a case is a non-dispositive matter committed to the broad discretion of a district court. See Hisler v. Gallaudet Univ., 344 F. Supp. 2d 29, 35 (D.D.C. 2004); Levin v. Majestik Surface Corp., 654 F. Supp. 2d 12, 14-15 (D.D.C. 2009). Where, as here, a party timely objects to a magistrate judge's decision with respect to a non-dispositive matter, the Court must modify or set aside all or part of that decision if it is "clearly erroneous" or "contrary to law." FED. R. CIV. P. 72(a); see also LOC. CIV. R. 72.2(c).

The "clearly erroneous" standard "applies to factual findings and discretionary decisions[.]" Coleman v. Sterling, Civil Action No. 09-1595, 2011 WL 2005227, at *2 (S.D. Cal. May 23, 2011). Under that deferential standard, a magistrate judge's factual findings or discretionary decisions must be affirmed unless, "although there is evidence to support [them],

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Federal Savs. & Loan Ins. Corp. v. Commonwealth Land Title Ins. Co., 130 F.R.D. 507, 508 (D.D.C. 1990) (internal quotations and citation omitted); see also Beale v. District of Columbia, 545 F. Supp. 2d 8, 13 (D.D.C. 2008). The "contrary to law" standard, by contrast, permits *de novo* review of a magistrate judge's legal conclusions. See First Am. Corp. v. Al-Nahyan, 2 F. Supp. 2d 58, 60 (D.D.C. 1998); see also Haines v. Liggett Group Inc., 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law.") (quoting FED. R. CIV. P. 72(a)).

### B. Motion to Stay

As the Supreme Court has stated:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936). Thus, whether to stay a case is a matter committed to a district court's broad discretion. See Hisler v. Gallaudet Univ., 344 F. Supp. 2d at 35 ("A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere."). Nevertheless, if, upon a party's request, "there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," then the movant "must make out a clear case of hardship or inequity in being required to go forward." Landis v. North Am. Co., 299 U.S. at 255.

Magistrate Judge Robinson concluded that ACCJ identified no ground warranting a stay and therefore denied ACCJ's request. In its objection to Magistrate Judge Robinson's decision, ACCJ asserts that Magistrate Judge Robinson incorrectly concluded that this case and Berganzo v. Ambush were not inextricably intertwined. See Objection at 5. According to ACCJ, Magistrate Judge Robinson "overlooked that, [sic] all of the claimants in the underlying Franqui litigation and witnesses to [Mr.] Ambush's activities that are involved in the Berganzo action are located in Puerto Rico." Id. at 5. Moreover, ACCJ contends that a determination on the legality of the retainer agreements that Mr. Ambush executed with the plaintiffs in Berganzo "will clearly have a direct bearing on [ACCJ's] claims that [Mr.] Ambush violated his fiduciary duty as an agent of [ACCJ] and tortiously interfered with [ACCJ's] relationships with the Franqui claimants." Id. at 6. Thus, ACCJ asserts that this case should be stayed until after the completion of proceedings in Berganzo in order "[t]o preserve judicial resources, avoid contradictory or inconsistent rulings and safeguard against the unnecessary expenditure of resources on duplicate and costly discovery[.]" Id.[3]

The Court disagrees. Although this case and Berganzo v. Ambush *may* have some interrelated issues, they certainly are not inextricably intertwined. First, it is undisputed that ACCJ is *not* a party to Berganzo v. Ambush. Nor are the plaintiffs in Berganzo parties to this case. And of the six claims and counterclaims made in this case, the issues raised in Berganzo v. Ambush relate only, if at all, to two of such claims: ACCJ's claims that Mr. Ambush breached his fiduciary duty to them and tortiously interfered with their contract or business expectancy by

---

[3] ACCJ notes that Berganzo v. Ambush now is scheduled for a four-day trial, beginning on September 19, 2011. See Reply at 4.

allegedly causing nine of the Franqui claimants to revoke the powers of attorney that they previously granted to ACCJ. See Compl. ¶¶ 57, 64.

Even assuming, however, that the two cases are inextricably intertwined, ACCJ "has failed to demonstrate how that fact serves to prejudice, or in any way disadvantage, [ACCJ]." American Ctr. for Civil Justice, 2011 WL 971643, at *3. Indeed, as Magistrate Judge Robinson concluded, "the only party who possibly could be prejudiced by the litigation of two action[s] against him in two different districts" — Mr. Ambush — "opposes a stay." Id. And ACCJ "has made no effort to demonstrate that a stay of this action would further the court's case management objectives, or otherwise ensure a more fair and just resolution of this action." Id. Moreover, ACCJ's argument with respect to duplicative and costly discovery is moot, "as the Berganzo action had an effective discovery cut-off of April 30, 2011." Response at 8. Any purportedly overlapping discovery "has already been taken and can be used as appropriate in this matter to avoid duplication." Id. at 9.

Under these circumstances, ACCJ has failed to "make out a clear case of hardship or inequity in being required to go forward." Landis v. North Am. Co., 299 U.S. at 255. The Court therefore concludes that Magistrate Judge Robinson's decision denying ACCJ's motion to stay is neither clearly erroneous nor contrary to law.

*C. Motion to Transfer*

Section 1404(a) of Title 28 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A party requesting

10

such transfer "bears the burden of showing that transfer is proper." Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 3 (D.D.C. 2006).

It is established that Section 1404 imposes two threshold prerequisites to transferability. Specifically, a court must find (1) that venue is "'proper in the transferee district'" and (2) that the defendant was "'subject to the process of the federal court in the transferee district at the time the action was originally filed.'" Levin v. Majestik Surface Corp., 654 F. Supp. 2d at 15 (quoting Relf v. Gasch, 511 F.2d 804, 806-07 (D.C. Cir. 1975)); see Jumpit, AS v. Why ASAP, LLC, Civil Action No. 04-1079, 2005 WL 607914, at *1-2 (D.D.C. Mar. 16, 2005). Even if the moving party establishes the two prerequisites for transfer, "the movant must still demonstrate that the 'balance of convenience of the parties and witnesses and the interest of justice are in [its] favor.'" Levin v. Majestik Surface Corp., 654 F. Supp. 2d at 15 (quoting Consolidated Metal Prods., Inc. v. American Petroleum Inst., 569 F. Supp. 773, 774 (D.D.C. 1983)) (alteration in original).

"Courts are afforded broad discretion to adjudicate motions for transfer based on an 'individualized, case-by-case consideration of convenience and fairness.'" Levin v. Majestik Surface Corp., 654 F. Supp. 2d at 14-15 (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). Thus, "[w]hile the burden is on the moving party to demonstrate that the 'balance and convenience of the parties and witnesses and the interest of justice are in [its] favor,' [a court] has broad discretion to determine where the proper balance lies." Rhee Bros, Inc. v. Seoul Shik Poom, Inc., 869 F. Supp. 31, 33-34 (D.D.C. 1994) (quoting Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991)).

In determining whether to transfer a case under Section 1404(a), a court may weigh a number of factors, including:

> "The convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory process to compel the attendance of unwilling witnesses; the amount of expense for willing witnesses; the relative congestion of the calendars of potential transferee and transferor courts; and other practical aspect[s] of expeditiously and conveniently conducting a trial."

Jumpit, AS v. Why ASAP, LLC, 2005 WL 607914, at *2 (quoting Chung v. Chrysler Corp., 903 F. Supp. 160, 163-64 (D.D.C. 1995)). Probably the most critical of these factors "is the convenience of the witnesses." Rhee Bros, Inc. v. Seoul Shik Poom, Inc., 869 F. Supp. at 34; see also JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 737 (E.D. Va. 2007). A plaintiff's initial choice of forum also will often be "of paramount consideration." Levin v. Majestik Surface Corp., 654 F. Supp. 2d at 16 (internal quotations and citation omitted). Yet deference to a plaintiff's choice of forum will be mitigated "where the forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." Id. (internal quotations and citations omitted).

Magistrate Judge Robinson denied ACCJ's request that she transfer this case to the United States District Court for the District of Puerto Rico, concluding that ACCJ "failed to carry its burden to show that the court should exercise its discretion" to transfer. American Ctr. for Civil Justice v. Ambush, 2011 WL 971643, at *4.[4] In its objection to Magistrate Judge

---

[4] Magistrate Judge Robinson also found "troublesome" the procedural context in which ACCJ's transfer request arose — as well as ACCJ's failure to discuss that context in its papers. American Ctr. for Civil Justice v. Ambush, 2011 WL 971643, at *4. Under the terms of the Court's Scheduling and Case Management Order, the parties were required to "file a joint request for referral to mediation" when ACCJ otherwise filed its request for transfer. Scheduling and Case Management Order ¶¶ 2, Aug. 5, 2009 [Dkt. No. 33]. Thus, Magistrate Judge Robinson found that a "transfer would frustrate the interest of justice by effectively allowing a party" — that is, ACCJ — "to opt out of the [C]ourt's scheduling order." American Ctr. for Civil Justice v. Ambush, 2011 WL 971643, at *4.

Robinson's decision, ACCJ contends that Magistrate Judge Robinson "did not give appropriate consideration to the [Section 1404(a)] factors[.]" Objection at 7 n.3. ACCJ admits that it is "unusual" for a plaintiff to seek transfer of a case that it initiated. Objection at 8. It argues, however, that transfer is appropriate here because

> the witnesses are located in Puerto Rico and would be available to be deposed and to appear at trial. The conduct and activities that [Mr.] Ambush engaged in with the Franqui claimants, to the detriment of [ACCJ], took place in Puerto Rico. The representatives of [ACCJ] have consented to be deposed in Puerto Rico. Moreover, [Mr.] Ambush is already defending an action brought by the Berganzo complainants in the [d]istrict [c]ourt in Puerto Rico, he is actively engaged in discovery in that [c]ourt, and has already noticed the deposition of representatives of [ACCJ].

Id. at 10-11.

Again, the Court disagrees. First, ACCJ — the plaintiff in this case — chose this forum when it filed its original complaint in this Court on February 6, 2009. In that complaint, and in its two amendments, ACCJ asserts that "[v]enue lies in this district . . . because a substantial part of the events giving rise to the claim occurred here." Compl. ¶ 6. Moreover, as Magistrate Judge Robinson noted,

> [t]he litigation activity initiated by [ACCJ], in addition to the filing of the complaint . . . , includes — but is not limited to — the filing of an amended complaint; moving for a preliminary injunction; filing a second amended complaint; agreeing with [Mr. Ambush] to conduct discovery in two phases; moving for judgment on the pleadings with respect to [Mr. Ambush's] counterclaim; moving for [Magistrate Judge Robinson's recusal]; moving to compel discovery[;] and filing an answer to [Mr. Ambush's] amended counterclaim.

American Ctr. for Civil Justice v. Ambush, 2011 WL 971643, at *1 (internal citations omitted). The Court agrees with Magistrate Judge Robinson's conclusion that ACCJ "has vigorously

litigated this action in this district, and has offered no reason that it cannot continue to do so." Id. at *4.

Second, and more important, although *some* witnesses in this case may be located in Puerto Rico, ACCJ has not alleged that any of these potential witnesses would be unavailable for trial here. See Response at 11. Moreover, Mr. Ambush points out that ACCJ's initial disclosure "lists eight possible witnesses [who] are *not* located in Puerto Rico." Id. (emphasis added).[5] Furthermore, Mr. Ambush himself resides in Maryland, and ACCJ has its principal place of business in New York. Thus, ACCJ entirely has failed to show that the consideration of witness convenience — probably the most critical of the Section 1404(a) factors, see Rhee Bros, Inc. v. Seoul Shik Poom, Inc., 869 F. Supp. at 34 — weighs in favor of transfer. The Court therefore concludes that Magistrate Judge Robinson's decision denying ACCJ's motion to transfer is neither clearly erroneous nor contrary to law.

---

[5] As ACCJ's counsel admitted at oral argument before Magistrate Judge Robinson: "We're willing to make the representation that of the witnesses that we have identified in our initial disclosure, *they are equally convenient to be deposed in Washington, D.C. as they are in Puerto Rico*. Those that we have direct control over" — ACCJ employees — "we would make them available in Puerto Rico. . . . The other witnesses are in Toronto, Israel . . . and New York, and *they are equally inconvenient to Washington, D.C. as they are to Puerto Rico*, and they'll be deposed wherever they are, so their status doesn't make much difference." Hr'g Tr. at 6:11-24, Feb. 2, 2011 [Dkt. No. 110] (emphasis added).

III. CONCLUSION

For the foregoing reasons, ACCJ's objection to Magistrate Judge Robinson's memorandum opinion and order will be denied, her decision will be affirmed, and ACCJ's motion for a stay or, in the alternative, for a transfer will be denied. Furthermore, the Court's Scheduling and Case Management Order provides:

> Following the conclusion of the first phase of discovery and a ruling on plaintiff's yet-to-be-filed motion for judgment on the pleadings, the parties shall file a joint request for referral to mediation before a magistrate judge. . . . In the event that mediation is unsuccessful, the parties shall begin the second phase of discovery, which shall include written discovery and depositions of the other party or of third parties.

Scheduling and Case Management Order ¶¶ 2-3, Aug. 5, 2009 [Dkt. No. 33]. The first phase of discovery has concluded, and Magistrate Judge Robinson denied (without prejudice) ACCJ's motion for judgment on the pleadings on September 30, 2010. Consequently, unless the parties otherwise agree to a different form of mediation, the parties shall either (1) proceed to mediation before a magistrate judge or (2) begin the second phase of discovery. In light of these options, by July 15, 2011, the parties shall file a joint statement regarding how they wish to proceed in this case.

A separate Order consistent with this Opinion shall issue this same day.

SO ORDERED.

DATE: July 1, 2011

/s/
PAUL L. FRIEDMAN
United States District Judge